| | | |
|---|---|---|
| RYAN S., by and through his parents, | : | Civil Action |
| George S. and Christine S., and | : | |
| GEORGE S. and CHRISTINE S., | : | No. 2:23-03270-JMY |
| individually, | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| DOWNINGTOWN AREA | : | |
| SCHOOL DISTRICT | : | |
| Defendant. | : | Hon. John M. Younge |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

## I. INTRODUCTION

Plaintiff Ryan, along with his parents, Plaintiffs George S. and Christine S. (collectively with Ryan "the Family"), filed a Motion for Judgment on the Administrative Record on February 29, 2024, seeking reversal of the Decision of an Administrative Special Education Hearing Officer, James Gerl. The Family was denied a fair and impartial due process hearing. Although the Family had the burden of proof in this matter, the Hearing Officer unfairly limited the Family's direct examination of its only expert witness to a paltry 10 minutes; meanwhile, the Hearing Officer permitted the School District to have one hour of direct examination for each of its witnesses. The Hearing Officer also failed to provide meaningful citations to the record to support his findings, which the School District does not deny, but simply labels "frustrating." As a result, the Family respectfully requests that this Court give no deference to the Hearing Officer's unreliable factual findings, credibility determinations, and legal conclusions.

The Family seeks compensatory education from October 24, 2020 to November 15, 2021, and reimbursement for tuition, costs, and transportation for the 2021-22 school year (starting on

November 15, 2021) and the 2022-23 school year pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et seq.; Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq.

## II.    SUMMARY OF THE ARGUMENT

The IEPs developed by the School District from October 24, 2020 through November 15, 2021, failed to meaningfully address all of Ryan's needs and were therefore inappropriate and resulted in a denial of FAPE. Ryan failed to progress with respect to his social and emotional needs. The School District counters that a student's failure to make progress is not evidence of a denial of FAPE and that a court can only review the IEP as of the time it is offered and not in hindsight. The District incorrectly recasts the Family's argument as only about "results." It is well-settled that progress is a relevant and indeed critical factor when determining whether a student was offered a FAPE. Although progress cannot be considered in a vacuum and a court must carefully examine the IEP when it was offered, the holdings of the Supreme Court and the plain language of IDEA clearly and explicitly place grave importance on a child's progress when examining whether a school district denied a student FAPE.

The District also claims the Hearing Officer's failure to provide meaningful citations to the record was merely "frustrating." It is, but it is also contrary to standard legal practice and a violation of IDEA. The Hearing Officer denied the Family its right to a fair hearing.

## III. ARGUMENT

### A. It is well-settled that parents can use a student's failure to make progress to prove that a school district denied a student FAPE.

The School District argues that a child's failure to make progress is not relevant to a determination as to whether the child was denied a FAPE. District Br., 2-4, 15-16. The District is wrong as a matter of law, as it is well-settled that the failure to make meaningful progress is powerful evidence of a denial of a FAPE.

Special education "must . . . be provided with an eye towards 'progress in the general education curriculum.'" *Endrew F. ex rel Joseph F. v. Douglas County School Dist. RE-1*, 580 U.S. 386, 401, 137 S. Ct. 988, 1000 (2017) (*quoting* 20 U.S.C. § 1414(d)(1)(A)(i)(IV)(bb)). The requirement of progress is no mere "procedural requirement[,] . . . [b]ut [is] there for a reason, and . . . provides insight into what it means, for purposes of the FAPE definition, to 'meet the unique needs' of a child with a disability." *Id*. at 401-02 (*quoting* 20 U.S.C. § 1401(9), (29)). A child's "IEP need not aim for grade-level advancement[,] [b]ut his educational program must be appropriately ambitious in light of his circumstances . . . . The goals may differ, but every child should have the chance to meet challenging objectives." *Id*. at 402. Considering this framework, the Supreme Court held that to meet the demanding, affirmative duty to provide a FAPE, requires progress "more demanding that the 'merely more than de minimis' test [previously] applied by" courts in sister circuits. *Id*. The Supreme Court held that in reviewing whether a child received a FAPE, courts must examine whether the student made appropriate progress:

> For children with disabilities, receiving instruction that aims so low would be tantamount to "sitting idly . . . awaiting the time when they were old enough to drop out." The IDEA demands more. It requires an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances.

*Id*. at 402-03 (*quoting Board of Educ. of Hendrick Hudson School Dist., Westchester County v.*

*Rowley*, 458 U.S. 176, 179, 102 S. Ct. 3034 (1982)).

The importance of using progress to determine educational benefit was evident as far back as the *Rowley* decision: "The grading and advancement system [, i.e., progress,] thus constitutes an important factor in determining educational benefit." *Rowley*, 458 U.S. at 203, 102 S. Ct. at 3049. The Court explicitly held in *Rowley* that the student's progress was the "dispositive" factor in determining whether she received a FAPE:

> We do not hold today that every handicapped child who is advancing from grade to grade in a regular public school system is automatically receiving a 'free appropriate public education.' In this case, however, we find that Amy's academic progress, when considered with the special services and professional consideration accorded by the Furnace Woods school administrators, to be dispositive.

*Id*. at 203 n.25. The Supreme Court in *Endrew F.* noted that the Court in *Rowley* ultimately examined the appropriateness of the student's IEP by examining the child's progress: "[T]he case before [the Supreme Court in *Rowley*] involved a child whose progress plainly demonstrated that her IEP was designed to deliver more than adequate educational benefits." *Endrew F.*, 580 U.S. at 398 (*citing Rowley*, 548 U.S. at 200).

The School District here misinterprets *Endrew F.* and states that "*Endrew F.* rejects liability based on the retrospective assessment of progress." Dist. Br., 15. The District does not provide a citation to support that assertion, and the District is mistaken. In the following sentence, the District writes that "[t]he IDEA does not guarantee an outcome: 'No law could.'" *Id*. (*quoting Endrew F.*, 580 U.S. at 386). And while that assertion is independently accurate, it neither supports nor refutes the Family's argument (and the Supreme Court's holding) that progress can be used to demonstrate whether an IEP was appropriate. *Endrew F.*, 580 U.S. at 398 (*citing Rowley*, 548 U.S. at 200).

The progress standard set forth in *Endrew F.* is consistent with, and expands upon, the standard that has been applied for many years in Third Circuit, requiring that a student receive an

IEP that is reasonably designed to allow a student to make meaningful educational progress and achieve "significant learning." *K.D. v. Downingtown Area Sch. Dist.*, 904 F.3d 248, 254 (3d Cir. 2018); *S.H. v. State-Operated School Dist. of City of Newark*, 336 F.3d 260, 265 (3d Cir. 2003) ("The IEP team is required to review the IEP at least annually to determine whether the child is reaching the stated goals. In addition, the IEP team is to revise the IEP to address lack of progress . . . ."); *see also Tyler W. v. Upper Perkiomen Sch. Dist.*, 963 F. Supp. 2d 427, 438-39 (E.D. Pa. 2013) (finding that when student makes little to no academic progress, it indicates that the district's failure to address his needs pervaded his entire school day and warrants the award of full days compensatory education).

In *B.D. v. District of Columbia*, 817 F.3d 792 (D.C. Cir. 2016), the District of Columbia Circuit held that a child is denied a FAPE and is owed compensatory education where the parents can prove that the child failed to make progress. 817 F.3d at 798. The court did not instruct the lower courts to simply look at the IEP at the date it was offered to determine whether a student was denied a FAPE; rather, courts may look at progress reports and evaluations to determine whether the child made progress during the relevant time period. *Id*. The court reversed the lower court and increased the compensatory education awarded to the family because a report showed the student "made little if any progress" while in school because the student was not provided all of his psychological counseling and tutoring while at school. *Id*. at 798-99.

Tracking a child's progress and basing an IEP on that progress is the fundamental, bedrock requirement of IDEA and without it, neither a school district nor a parent knows whether the district is providing a FAPE. "The IEP team is required to review the IEP at least annually to determine whether the child is reaching the stated goals." *S.H.*, *supra*, 336 F.3d at 265. When a child is not making progress, "the IEP team . . . [must] revise the IEP to address [the] lack of

progress . . . ." *Id.* (*citing* 20 U.S.C. § 1414(d)(1)(A)(4)); *see* 20 U.S.C. § 1412(a)(4) (requiring an IEP to be "developed, reviewed, and revised for each child with a disability"); 20 U.S.C. § 1414(d)(1)(A)(i)(I)(aa) (requiring the IEP to include a statement of the child's progress in the general education curriculum); 20 U.S.C. § 1414(d)(1)(A)(i)(II)(aa) ("goals . . . [must be] designed to . . . enable the child to . . . make progress"); 20 U.S.C. § 1414(d)(1)(A)(i)(III) (requiring progress reports); 20 U.S.C. § 1414(d)(1)(A)(i)(IV) (IEP must include "special education and related services . . . that will be provided to the child . . . to be involved in and make progress in the general education curriculum"); 20 U.S.C. § 1414(d)(4)(A)(ii)(I) ("the IEP Team . . . [must] revise[] the IEP as appropriate to address any lack of expected progress"); (an evaluation must "use a variety of assessment tools . . . that may assist in determining . . . the content of the child's [IEP] . . ., including information related to enabling the child to be involved in and progress in the general education curriculum").

In *N.M. ex rel W.M. v. Central Bucks School District*, 992 F. Supp. 2d 452 (E.D. Pa. 2014), although the court found that the school district offered the student a FAPE, the court examined the objective measures of the student's academic progress to arrive at that conclusion. 992 F. Supp. 2d at 464-68. The court extensively examined the progress the student made in reading and writing to determine whether the district offered him a FAPE. *Id.*

The School District argues that progress is only to be considered in the "development" of an IEP. Dist. Br., 3. The District believes that progress cannot be considered by a court when examining whether an IEP was appropriate. *Id.*

The School District seriously misapprehends the Family's argument and the Supreme Court's and Third Circuit's jurisprudence on this matter. The Family has not argued that Student's lack of progress stands alone as the only evidence of a denial of FAPE. While some district courts

in the Eastern District have criticized relaying entirely on progress as a measure of FAPE, those courts have merely held that the appropriateness of an IEP cannot be judged "solely" by progress, and here the Family has put forward substantial additional evidence to support the inappropriateness of Ryan's IEPs. *Perkiomen Valley School District v. S.D. by and through J.D.*, 405 F. Supp 3d 620, 629 (E.D. Pa. 2019) (*citing Colonial Sch. Dist. v. G.K. by and through A.K.*, 2018 WL 2010915 at *11 (E.D. Pa. Apr. 30, 2018)). But obviously progress is relevant and vitally important, as the decisions above and IDEA's statutory text unambiguously express.

The School District here, however, is attempting to expand those two district court cases to argue that progress cannot be taken into account when determining whether a student was denied a FAPE. The School District is wrong.

**B.    The Hearing Officer's failure to provide meaningful citations to the record was not merely "frustrating," as the School District posits, but rather contrary to appropriate, standard legal practice.**

Facts are important. But here, the Hearing Officer either provided no citation to the record to support critical findings of fact or vaguely cited to dozens and dozens of dense pages of educational records. The School District argues this is merely "frustrating." Dist. Br., 11-12. The District is wrong is downplay the Hearing Officer's lack of care in performing his fact-finding duty. Because the Family was denied a fair and impartial hearing, this Court should disregard the Hearing Officer's credibility determinations and findings of fact and examine this matter de novo.

Fact-finding and determining credibility are the critical responsibilities of the trial court. *See Scully v. US WATS, Inc.*, 238 F.3d 497, 506 (3d Cir. 2001) ("[t]he credibility of witnesses is quintessentially the province of the trial court") (*quoting Dardovitch v. Haltzman*, 190 F.3d 125, 140 (3d Cir. 1999)).

All courts emphasize a litigant's responsibility to accurately support factual assertions, and

7

that same emphasis should apply to the Hearing Officer in this case. For example, this Court's Policies and Procedures instruct that when drafting a summary judgment motion, a litigant must support "a recitation of facts with complete and accurate citation to the record." Milton, J., *Policies and Procedures: General Matters, Civil Cases, and Criminal Cases*, 13. The Court is explicit in its requirement for accurate citations to the record, stating that "[t]he Court will not consider any description of a fact that is not supported by citation to the record." *Id*. at 14. Removing any doubt on the necessity of accurate citations, the Court warns litigants that facts "must include *specific* and not general references to the parts of the record that support each of the statements [of material facts]," and that "[p]inpoint citations are required." *Id*. (emphasis in the original, by this Court).

IDEA requires a hearing system administered by well-trained, independent hearing officers. 20 U.S.C. § 1415(f)(3)(A). A hearing officer is required to not only be knowledgeable of IDEA and related special education laws, but must also "possess the knowledge and ability to conduct hearings in accordance with appropriate, standard legal practice . . . ." 20 U.S.C. § 1415(f)(3)(A)(ii), (iii).

Here, the Hearing Officer failed to provide pinpoint citations to the record. The School District brushes this deficiency aside, labeling it as merely "frustrating" but "consistent with all the Pennsylvania hearing officers' practice." Dist. Br., 12. The District then takes liberties with the Hearing Officer's broad citations to the record and attempts to pinpoint the support in that large swath of records. *Id*. at 12-13. The School District's efforts, while valiant, are not much more than a guess.

The Hearing Officer's lack of clarity is indeed frustrating, but that is simply the tip of the iceberg. And whether other hearing officers have or have not shown the same disregard in citing to the record is irrelevant—their practices are not before this Court. The Family alleges that here

the Hearing Officer denied them a fair and impartial due process hearing by *inter alia* failing to provide meaningful citations to the record on critical issues of fact, including whether Ryan made progress:

- "The student subsequently made significant progress with the student's ability to self-regulate and demonstrate appropriate social skills." AR Doc. 4-3 at 8 (Decision, 7) (*citing generally* J-14, J-15). Joint Exhibits 14 and 15 consist of 91 single-spaced pages.

- Hearing Officer Gerl claimed, without citation to authority, that "[o]n December 11, 2020, an IEP team meeting was held to review the results of the Columbia – Suicide Severity Rating Scale and to provide additional supports, including the student seeing a prevention specialist once per week." AR Doc. 4-3 at 8 (Decision, 7). Although the Parents were made aware of the statements and the incident that led to the statements, they were not advised that the CSSRS was completed or provided a copy until the due process hearing. AR Doc. 4-7 at 18 (N.T. 2/17/23, 63-65).

- The Hearing Officer concluded that Ryan "made progress" towards his IEP goals in the first semester of the 2021-22 school year: "During the first semester of the 2021 – 2022 school year, the student made progress on the student's IEP goals. The student received grades of A and B in all of the student's academic classes." AR Doc. 4-3 at 15 (Decision, 14) (*citing* J-31, J-39, J-41, J-45). Joint exhibit 31 is a 66-page IEP; exhibit 39 is a 17-page Communications Chart; exhibit 41 is an 11-page Progress Report; and exhibit 45 is a 59-page IEP. Whether Ryan made meaningful progress is a critical issue in this case, yet Mr. Gerl simply referenced to 153 pages without further specificity to support his finding that Ryan made progress.

Neither Mr. Gerl's citations nor the conclusion that Ryan "made significant progress" are reliable and must be rejected by this Court as they are belied by the record. Because the Hearing Officer failed to supply accurate citations to the record, the Family is impeded in its effort to challenge the factual findings.

Furthermore, in its opening brief, the Family argued that the Hearing Officer's decision to limit the mother's testimony to 60 minutes and the expert's testimony to 10 minutes was arbitrary and denied the Family a fair and impartial hearing. The School District responded by arguing that the Family received a fair hearing because the hearing was in accordance with the Hearing

Officer's Prehearing Directions (Dist. Br., 5-6), the same directions that the Family challenges in this Court. However, the School District's argument overlooks the fact that the Family has the burden of proof during a due process hearing. The Hearing Officer's directions do not limit the number of witnesses a party can call, but rather the length of time an individual can testify. Naturally, because a student has multiple teachers, aides, therapists, psychologists, and administrators who interact with the student, a school district will almost always have more witnesses available to it than a family. While the School District casually refers to these professional educators with graduate degrees and years, if not decades, of teaching experience as mere "fact witnesses" (Dist. Br., 8), common sense dictates that teachers, counselors, and administrators are *de facto* experts in the field of education—if they are not experts then they should not be teaching and counseling children with disabilities. Yet, here, the Hearing Officer permitted an hour of direct examination of each School District employee, but only 10 minutes of examination for the Family's expert.

Although a family has the burden of proof, it naturally does not have as many witnesses at its disposal. Thus, it is not fair to arbitrarily limit the testimony of witnesses called by the party with the burden of proof. The School District submits that this is to prevent "excess lawyering." Dist. Br., 4.[1] However, the District's argument is a non-sequitur, as it was the witnesses, including the Plaintiff (Ryan's mother), who was limited, not just the lawyers. The reality of the Hearing Officer's rule is that it prevents a parent from pleading her case—it prevents a fair and impartial hearing. A parent attorney cannot be asked to meet the burden of proof with such arbitrary restraints on testimony.

---

[1] The School District believes the Hearing Officer's limitations were "unsurprisingly[] necessary" to prevent "excess lawyering," and by way of example cites that opening statements stretched beyond the allotted five minutes to extend to 10 minutes. A 10 minute opening statement is by no means excessive.

## IV. CONCLUSION

The Plaintiffs respectfully request that this Court: reverse the Decision of Hearing Officer Gerl and award (1) compensatory education from October 24, 2020 to November 15, 2021; (2) reimbursement for tuition, costs, and transportation for the 2021-22 school year (starting on November 15, 2021) and the 2022-23 school year; (3) attorney's fees and costs; and (4) any other such other relief as this Court deems just and proper.

Respectfully submitted,

/s/ *D. Daniel Woody*
D. Daniel Woody, Esquire
ID No. 309121

/s/ *Michael J. Connolly*
Michael J. Connolly, Esquire
ID No. 82065

/s/ *Dennis C. McAndrews*
Dennis C. McAndrews, Esquire
ID No. 28012

McANDREWS, MEHALICK, CONNOLLY,
HULSE & RYAN, P.C.
30 Cassatt Avenue
Berwyn, PA 19312
(610) 648-9300 (phone)
(610) 648-0433 (fax)
Attorneys for Plaintiffs